**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

CLOVIS LIVESTOCK AUCTION, INC.

Plaintiff,

v. Civ. No. 24-1296 GBW/DLM

NATIONWIDE AGRIBUSINESS
INSURANCE COMPANY,

Defendant.

# ORDER GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE AND EXCLUDE THE EXPERT OPINIONS OF TERRY INGO

THIS MATTER comes before the Court on Clovis Livestock Auction, Inc.'s Motion to Strike and Exclude the Expert Opinions of Terry Ingo. *Doc. 39*. Defendant filed a Response in opposition and Plaintiff filed a Reply. *Docs. 41, 42*. On September 16, 2026, the Court held a hearing on the motion. *Doc. 62*. The Court, having considered the parties' briefing and oral arguments, and being otherwise fully informed, will GRANT the motion IN PART and DENY it IN PART.

## I. BACKGROUND

This case was removed to federal court on December 24, 2024. *Doc. 1*. The operative amended complaint was filed July 22, 2025. *Doc. 27*. The facts of the case are fairly straightforward. Plaintiff Clovis Livestock and Defendant Nationwide Agribusiness Insurance Company entered into a contract to insure Plaintiff's property

at 504 S. Hull St., Clovis, NM 88101. *Id.* at 2. The contract contained an endorsement which limited coverage for hail and wind damage that was only "cosmetic" as defined by the policy. *Doc. 39-1* at 8.

On or about May 23, 2023, the property was damaged by hail. *Doc. 27* at 2. Plaintiff informed Defendant of the hail damage, but Defendant asserted that the damage was merely "cosmetic" and was therefore not a covered loss under the policy. *Id*. Plaintiff brought claims against Defendant for (1) breach of contract and (2) bad faith and punitive damages. *Id.* at 5.

Terry Ingo, an Arizona general contractor, was retained by Defendant to opine on the issues of causation and damages. *Doc. 41* at 2; *doc. 39* at 1.[1] According to Mr. Ingo's curriculum vitae, he has "over thirty years of construction industry experience and twenty years of construction forensic investigation experience." *Doc. 41-1* at 2. Mr. Ingo performed a visual inspection of Plaintiff's property on November 10, 2025, and used that inspection as well as four reports to conclude that the metal roofs at the site had "some limited cosmetic damage from hail, but any issues with the roofs' performance are the result of poor maintenance or projectile penetrations." *Doc. 41-2* at

[1] In the briefing, Plaintiff alleges Defendant has proffered Mr. Ingo as "an expert on forensic causation of damage, metallurgical damage evaluation, and the quantum of reasonable repair costs" and that Defendant is using Mr. Ingo's opinion to meet "its burden of proof related to the applicability of exclusionary language under the Insurance Policy, forensic causation of damage, and the quantum of reasonable costs of repair." *Doc. 39* at 1, 8. Defendant asserts Mr. Ingo's opinions are *only* offered to address causation and damages, that he is not proffered as a metallurgical or insurance expert, and that he will not give a coverage opinion. *Doc. 41* at 5; *doc. 62* at 4.

5. Mr. Ingo also opined that Plaintiff's estimate for the cost of replacement was too high. *Id.* at 7.

Plaintiff moved to strike and exclude Mr. Ingo's opinion as unreliable, irrelevant, and inadmissible because he provided "no relevant standard for his comparison of the data he observed, cite[d] no third-party authority in support of his conclusions, did not review the applicable definitions under the Policy, and relie[d] solely upon *ipse dixit* in his written report for his conclusions." *Doc. 39* at 1; *see also doc. 62*. Plaintiff argues that Mr. Ingo's opinions are *ipse dixit* because he "stated no reasoning or methodology to support his assertions as to causation, nature of the damage, or costs of repairs," instead only including his conclusions that "the roofs are past their life expectancy, were 'poorly' maintained, the hail damage is 'cosmetic' based on some undescribed standard, and a contractor would charge 'less than $750,000' to repair the damaged metal roofing structures." *Doc. 39* at 6-7.

Defendant argues that Mr. Ingo is qualified, that his conclusions are based on his own observations, and that his inspection paired with his extensive experience is sufficient to satisfy the reliability requirements of Rule 702. *Doc. 41* at 6-7; *see also doc. 62*. Overall, Defendant argues that Plaintiff's contentions go to the weight of Mr. Ingo's opinions, not their admissibility. *See id.* at 8-12.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 ("Rule 702") governs the admissibility of expert testimony and states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under this rule, a district court must ensure that an expert's testimony is admitted only if it is both reliable and relevant. *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993)); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

To determine reliability and relevance of an expert's proposed testimony, the court follows three steps.[2] First, the Court decides "whether the proffered expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion." *Bill Barrett Corp.*, 918 F.3d at 770 (quoting Fed. R. Evid. 702). If the expert is sufficiently qualified, the court must next "determine whether the expert's opinion is reliable by

[2] Some Courts only count Step 2 and Step 3, making it a two-part inquiry. *See Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 (10th Cir. 2005).

assessing the underlying reasoning and methodology, as set forth in *Daubert*." *Id.* (quoting *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc)).[3] In making this determination, the Court considers the factors outlined in Rule 702. *See* Fed. R. Evid. 702(b)-(d); *Wheatridge Office, LLC, v. Auto-Owners Ins. Co.*, 578 F. Supp. 3d 1187, 1200 (D. Colo. 2022). "'The focus, of course, must be solely on principles and methodology, not on the conclusions they generate.'" *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1217 (10th Cir. 2016) (quoting *Daubert*, 509 U.S. at 595). A party need not prove that the expert is undisputably correct, instead, they must show that the method employed to reach the conclusion is sound and that the opinion is based on facts that satisfy Rule 702. *Id*. at 1217-1218 (citing *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999)). Where a court concludes there is too great an analytical gap between the data and opinion offered, it is not required to admit the opinion evidence, and there is nothing in Rule 702 nor *Daubert* that "requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Id.* at 1218 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)); *see also Schulenberg v. BNSF Ry. Co.*, 911 F.3d 1276, 1283 (10th Cir. 2018).

---

[3] Many factors may bear on whether expert testimony is based on sound methods and principles. *See* Fed. R. Evid. 702. The *Daubert* Court offered five non-exhaustive considerations: whether the theory or technique has (1) been or can be tested, (2) been peer-reviewed, (3) a known or potential error rate, (4) standards controlling the technique's operation, and (5) been generally accepted by the scientific community. *Daubert*, 509 U.S. at 593-94.

Finally, the Court must determine whether the "proposed testimony is sufficiently 'relevant to the task at hand,'" *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 (10th Cir. 2005) (quoting *Daubert*, 509 U.S. at 597), and whether it will "assist the trier of fact to understand the evidence or to determine a fact in issue," *Daubert,* 509 U.S. at 591 (quoting Fed. R. Evid. 702).

The court has discretion to determine "how to perform its gatekeeping function under *Daubert*," *Bill Barrett Corp.*, 918 F.3d at 770 (citation omitted), but rejecting expert testimony "is the exception rather than the rule, and '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence,'" *McKenzie v. Hanover Ins. Co.*, 722 F. Supp. 3d 1226, 1231 (E.D. Okla. 2024) (citing *Daubert*, 509 U.S. at 596).

**III. ANALYSIS**

The Court will first address Mr. Ingo's qualifications as an expert. The Court will then discuss the topics of Mr. Ingo's proposed testimony in turn.

**a. Qualifications**

At the first step of the *Daubert* inquiry, the Court must decide "whether the proffered expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion." *Bill Barrett Corp.*, 918 F.3d at 770 (quoting Fed. R. Evid. 702). As stated previously, Mr. Ingo has "over thirty years of construction industry experience

and twenty years of construction forensic investigation experience." *Doc. 41-1* at 2. Further, Plaintiff does not make any meaningful argument questioning Mr. Ingo's qualifications other than saying that his work "in the construction industry with regard to 'railroads' and 'aquatic facilities' does not authorize him to testify to scientific opinions on the change in metallurgical properties caused by hail, including the penetration of elements through the Galvalume coating on the metal roofing panels." *Doc. 42* at 2. However, Defendant is not offering Mr. Ingo as a metallurgical expert. *Doc. 41* at 5; *see also doc. 62*. Plaintiff does not argue that Mr. Ingo is not qualified to opine about causation and damages, so the Court finds Mr. Ingo qualified as an expert on those topics for the purposes of step one.

Since the Court finds Mr. Ingo sufficiently qualified to be considered an expert on causation and damages, the next steps are for the Court to (1) "determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in *Daubert*," *Bill Barrett Corp.*, 918 F.3d at 770 (quotation omitted), and (2) decide whether the opinion would "assist the trier of fact to understand the evidence or to determine a fact in issue," *Norris*, 397 F.3d at 883 (quoting Fed. R. Evid. 702).

**b. Causation**

Mr. Ingo offers several opinions about causation in his report, including, *inter alia*, that the hail damage was cosmetic, that "the condition of the corrugated metal is so bad from poor maintenance," and that the roofs had exceeded their useful lives. *Doc.*

*41-2* at 4-6. The Court finds that the report supplies sufficient indicia of reliability and relevance, and therefore this opinion should be allowed.

*i. Reliability*

Plaintiff argues that Mr. Ingo's statements about causation should be excluded because his report does not set out a specific methodology. *Doc. 39* at 6-7. Accordingly, Plaintiff asserts that Defendant failed to put Plaintiff on notice about how Mr. Ingo formed his opinions. *Doc. 62* at 5-6. However, Mr. Ingo's methodology is sufficiently clear: he personally inspected the property and used his observations in conjunction with his thirty years of experience to come to his conclusions.

"[A]n expert's 'personal experience, training, method of observation, and deductive reasoning' could be sufficiently reliable to constitute valid methodology." *Richardson v. CSAA Gen. Ins. Co.*, 2025 WL 2189076, at *4 (E.D. Okla. June 5, 2025) (quoting *Morales v. E.D. Etnyre & Co.*, 382 F. Supp. 2d 1252, 1270 (D.N.M. 2005)), and Courts have found that extensive experience combined with an in-person inspection of an impacted property can satisfy *Daubert*. *See, e.g., Bellina v. Liberty Mut. Ins. Co.*, 2021 WL 1295018, at *9 (E.D. La. Apr. 7, 2021) ("Given [the expert's] extensive experience in inspecting roofs that have been damaged by hail, the Court finds [the expert's] physical inspection a reliable methodology to determine the cause of damage to [Plaintiff's] roof."); *Gannon Int'l, Ltd. v. Lexington Ins. Co.*, 2008 WL 3244025, at *11 (E.D. Mo. Aug. 6, 2008) (the expert's "background and experience combined with his inspection of the

fourteen roofs provides a basis for him to give an opinion as to the condition of all the roofs"); *Calvetti v. Antcliff*, 346 F. Supp. 2d 92, 113 (D.D.C. 2004) ("The fact that [the expert] was able to view the properties first hand and provide specific examples of the quality of work that had been performed by the defendants indicates that his opinion is not based on mere guess work or conjecture.").

Accordingly, even though Mr. Ingo did not expressly set forth his methodology in his expert report, his methodology is sufficiently clear and satisfies *Daubert*. While Plaintiff may disagree with Mr. Ingo's characterization of the property as "poorly maintained," the proper remedy is not for the Court to strike the opinion, but rather for Plaintiff to challenge the opinion through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" which are "the traditional and appropriate means of attacking shaky but admissible evidence." *McKenzie*, 722 F. Supp. 3d at 1231.

*ii.* *Relevance*

The Court also finds that Mr. Ingo's opinions regarding causation are relevant. The endorsement at issue in the policy excludes "cosmetic" hail damage from coverage. Under the policy, "cosmetic" means superficial damage that "altered the appearance of the roof surfacing, but such damage does not prevent the roof from continuing to function as a barrier to entrance of the elements *to the same extent as it did before the cosmetic damage occurred*." *Doc. 39-1* at 8 (emphasis added). Accordingly, knowing the

condition of the roofs before the hail damage would help the fact finder understand the extent to which the hail impacted the roofs' function, even if Mr. Ingo could not offer a final opinion as to whether the damage met the policy definition of "cosmetic."

**c. Damages**

Regarding damages, Mr. Ingo's report asserts that "if the job to replace all the roofs was competitively bid, by qualified Arizona roofing contractors, the costs would be less than $750,000." *Doc. 41-2* at 7. The Court finds that this opinion does not meet the required reliability and relevance thresholds and should therefore be excluded.

*i. Reliability*

Mr. Ingo does not explain any methodology for how he arrived at his conclusion regarding pricing beyond reviewing estimates prepared by Plaintiff. *See id.* at 2. Mr. Ingo did not reference the estimated costs of labor or materials, whether replacement costs are the same in New Mexico and Arizona, how he determined the correct amounts of material and labor, or any other information that would ground his estimate beyond his mere say-so. Accordingly, Plaintiff and the Court are unable to determine whether "the testimony is based on sufficient facts or data," whether "the testimony is the product of reliable principles and methods," and whether "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d). Even if Mr. Ingo could further explain his opinions' bases under cross examination, his submitted report contains no underlying data that would put Plaintiff

on notice of how Mr. Ingo came to his conclusions. Accordingly, the Court finds that Mr. Ingo's opinion on damages does not satisfy Rule 702's reliability requirements and that it should therefore be excluded. *See Etherton*, 829 F.3d at 1218 (stating that there is nothing in Rule 702 nor *Daubert* that "requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert") (quoting *Gen. Elec. Co.* 522 U.S. at 146).

*ii. Relevance*

In addition to not meeting Rule 702's reliability requirements, the Court also finds that Mr. Ingo's opinions on damages are irrelevant and would not "assist the trier of fact to understand the evidence or to determine a fact in issue." *Norris*, 397 F.3d at 883 (quoting Fed. R. Evid. 702).

Mr. Ingo's opinion on damages is that a qualified Arizona roofing contractor could replace the roofs for less than $750,000. *Doc. 41-2* at 7. However, the property is located in eastern New Mexico. Mr. Ingo offers no evidence to support the contention that roofing contractors in Arizona and New Mexico work at similar rates. Even assuming Mr. Ingo is correct in his estimate, without more evidence linking the two, the price of Arizona contractors is wholly irrelevant to the price of New Mexico contractors. Accordingly, the Court finds that Mr. Ingo's proffered testimony would not assist a jury in determining the estimated costs of replacing the roofs, and the opinion should be excluded.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff Clovis Livestock Auction, Inc.'s Motion to Strike and Exclude the Expert Opinions of Terry Ingo (*doc. 39*) is DENIED with respect to testimony on causation and the condition of the roofs before the hail damage occurred,[4] and GRANTED regarding testimony on damages and the cost of roof repair or replacement.

**IT IS SO ORDERED.**

GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**

[4] As was discussed at the hearing, there is a concern that Mr. Ingo's using the term "cosmetic" to describe the effect of the hail damage may be confusing for the jury and possibly prejudicial. *Doc. 62* at 6. The Court does not feel the need to address the issue in this order beyond stating that Mr. Ingo will not be permitted to use the term "cosmetic" as it is a term of art defined in the insurance contract which he did not review. Before trial, the Court will work with the parties to determine suitable synonyms.