**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

CLOVIS LIVESTOCK AUCTION, INC.,

Plaintiff,

v. Civ. No. 24-1296 GBW/DLM

NATIONWIDE AGRIBUSINESS
INSURANCE COMPANY,

Defendant.

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO EXCLUDE LATE DISCLOSED OPINIONS**

THIS MATTER comes before the Court on Defendant's Motion to Exclude Late Disclosed Opinions. *Doc. 57*. Plaintiff filed a Response in opposition and Defendant filed a Reply. *Docs. 61, 67*. The Court, being fully informed, will GRANT the motion IN PART and DENY it IN PART.

## I. RELEVANT BACKGROUND

Under this Court's Scheduling Order, Plaintiff was to provide expert reports and disclosures no later than October 15, 2025. *Doc. 19* at 2; *see also* Fed. R. Civ. P. 26(a)(2)(B), (C). On September 2, 2026, Defendant filed the present motion, alleging that Plaintiff failed to disclose and indeed was attempting to change or supplement, certain portions of the expert opinions of Chad Williams, Ricky Conradt, and Jeffrey Molnar. *Doc. 57* at 1. Accordingly, Defendant requests that the Court exclude the deficient

testimony, disregard it when ruling on Defendant's Motion for Summary Judgment (*doc. 55*), and not allow Plaintiff to offer the opinions at trial. *Doc. 57* at 14.

Plaintiff alleges that there is no evidence it failed to disclose any expert opinion it relied on for its Response to Defendant's Motion for Summary Judgment (*doc. 56*), and that there is similarly no evidence that Defendant was prejudiced by the expert declarations. *Doc. 61*. Plaintiff therefore asks the Court to deny Defendant's Motion in full.

## II. LEGAL STANDARD

Under Rule 26, expert disclosures must be accompanied by written reports that contain, *inter alia*, a complete statement of all opinions the witness will express and the factual bases underlying those opinions. Fed. R. Civ. P. 26(a)(2)(B). Supplementation of expert reports is permitted under Rule 26(e) to "correct[] inaccuracies, or fill[] the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Martinez v. Cont'l Tire the Americas, LLC*, 2020 WL 4719068, at *1 (D.N.M. Aug. 13, 2020) (quoting *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1169 (D. Colo. 2006)); *see also Beller v. United States*, 221 F.R.D. 689, 694-95 (D.N.M. 2003) (observing that new information that was previously unavailable to a party may form a proper basis for the supplementation of an expert report). However, Rule 26(e) is "not intended to provide an extension of the expert designation and report production deadline" and may not be used for that purpose. *Lay v. Wal-Mart Stores E.,*

*L.P.*, 2020 WL 6709541, at *2 (D.N.M. Nov. 16, 2020) (quoting *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 324 (5th Cir. 1998)). The duty to supplement "does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report" and "does not allow a party to file supplements intended to 'deepen' or 'strengthen' its own expert's prior rule 26(a)(2)(B) report." *Leviton Mfg. Co., Inc. v. Nicor, Inc.*, 245 F.R.D. 524, 528 (D.N.M. 2007) (citing *Beller*, 221 F.R.D. at 701).

Accordingly, late-disclosed evidence, including late-disclosed expert testimony, is generally deemed inadmissible at trial unless the late disclosure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1). Although the determination of whether a late disclosure is justified or harmless "is entrusted to the broad discretion of the district court," the Tenth Circuit has provided four factors to "guide [the district court's] discretion" including (1) prejudice or surprise to the opposing party; (2) ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial setting; and (4) the moving party's bad faith or willfulness. *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

## III. ANALYSIS

The Court will address each of the allegedly delayed expert opinions in turn.

### a. Opinion of Chad Williams

In its Response to Defendant's Motion for Summary Judgment (*doc. 56*), Plaintiff includes a declaration from its retained engineer, Chad Williams, in which he states that "Valor selected and removed representative samples from three roof areas for metallurgical analysis," that the "sampled areas were selected to represent typical panel types and hail-impact conditions observed at the property, not because damage was confined to those three buildings," and that "the roof-panel samples submitted for laboratory analysis were representative of the panel types and hail-impact conditions observed on the accessible metal roofs." *Doc. 56-2* at ¶¶ 6, 10.

Defendant claims that inclusion of this testimony is improper because in his deposition, Mr. Williams stated that the samples "taken from the three roofs were not in fact representative of all the roofs at the property, but were only representative of the hail damage to that particular roof from which the samples [were] removed." *Doc. 57* at 8. Defendant further notes that Mr. Williams was given an opportunity to review and clarify his deposition testimony but did not do so. *Id.* at 9. Accordingly, Defendant asserts that Mr. Williams is attempting to belatedly change his deposition testimony and that Plaintiff cannot rely on Mr. Williams' declaration or report to create a genuine issue of material fact. *Id.*

The Court finds Defendant's argument to be unpersuasive. Looking at the deposition testimony in its entirety, Mr. Williams plainly explained that the three roof samples were representative of the examined metal roofs on the property.[1] *See doc. 55-8* at 109:15-113:25. For example, Mr. Williams told Defendant that "[s]amples were taken of representative roofs for the property," that he tried to "take samples from roofs that represented a variety on site," that he "found very similar conditions across the other roof surfaces during the evaluations[,]" and that he was "trying to make sure that we had representative [*sic*] of the whole." *Id*. at 110:24-25, 111:24-25, 112:7-11. Defendant's assertion that Mr. Williams stated the roof samples were *not* representative of the roofs on the property does not fairly represent his testimony.

Accordingly, the Court finds that Defendant had notice of Mr. Williams' testimony that the roof samples were representative of the inspected metal roofs on the property, not just the specific roofs of which the samples were a part. Mr. Williams' testimony was not a late disclosure and regarding that testimony, Defendant's motion is DENIED.

---

[1] Plaintiff alleges that Mr. Williams' testimony states that the roof samples were representative of the conditions of all ten roofs at the property. *Doc. 61* at 17. This assertion appears inaccurate as two roofs were never inspected, *see doc. 55-8* at 111:13-18, and not all roofs on the property were made of metal. *Doc. 67* at 12 n.3. Accordingly, the Court finds Mr. Williams' testimony is applicable to the metal-roofed buildings on the property that were in fact inspected. *See doc. 56-2* at ¶ 10.

**b. Opinion of Ricky Conradt**

In response to Defendant's Motion for Summary Judgment, Plaintiff provided a declaration from its non-retained expert, Ricky Conradt. Mr. Conradt's testimony stated, *inter alia*, that the hail damage he observed required "complete replacement of the roofing systems as identified in the scope of work of Rick Doshier and 5D Loss Consultants. The replacement methodology is required by the observed hail damage and no other cause." *Doc. 56-5* at ¶ 4. Defendant asserts that there was nothing in Mr. Conradt's disclosure that suggested that he would offer the opinion that the hail damage would require all the roofs to be replaced, accordingly the opinion is late-disclosed and should not be permitted. *Doc. 57* at 9-12; *doc. 67* at 4.

Plaintiff argues that Nationwide has been on notice of Plaintiff's position that all the roofs needed to be replaced before the present lawsuit was even filed, so there is no prejudice because Defendant knew the substance of the expert's testimony. *Doc. 61* at 3-5 (citing *Jager v. Andrade-Barranza*, 2019 WL 6896643, at *6 (D.N.M. Dec. 18, 2019)). Plaintiff also asserts that Conradt is qualified, that his opinions are reasonable and reliable, and that if the disclosures are deficient, the proper remedy would be for Defendant to depose him and supplement the disclosure prior to trial. *Id.* at 8-12.

Under Federal Rule of Civil Procedure 26, a party calling a non-retained expert witness must produce a disclosure containing "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705;

and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

In this case, Plaintiff's only disclosure with respect to Mr. Conradt was that he:

> is a licensed public adjuster and cost estimating professional. He will testify that he inspected the roofing systems and buildings in dispute and observed hail and wind damage consistent with the storm at issue. He will also testify to industry-standard methodology for purposes of repairing and replacing the damaged materials at the Property.

*Doc. 58* at 6.

Plaintiff's disclosure regarding Conradt is exceedingly vague and does not contain a summary of facts or opinions. Although Plaintiff notes that Mr. Conradt will "testify to industry-standard methodology for purposes of repairing and replacing the damaged materials at the Property," nothing in the disclosure would reasonably put Defendant on notice that Conradt was going to testify that all the roofs needed to be replaced, or that such replacement was necessitated by the hail damage. *See Ingram v. Novartis Pharmaceuticals Corp.*, 282 F.R.D. 563, 565 (W.D. Okla. 2012) ("mere reference to unspecified testimony is insufficient" under the standards of Rule 26). The fact that Defendant knew Plaintiff planned to argue that the roofs needed to be replaced did not put Defendant on notice of *who* would testify to that fact. *See Pineda v. City and Cty. of San Francisco,* 280 F.R.D. 517, 523 (N.D. Cal. 2012) ("[A]bsent disclosure of the information required under Rule 26(a)(2)(C), Defendant cannot make an informed decision on which, if any, of the twelve treating physicians it should depose."). Indeed,

according to Nationwide, it did not depose Mr. Conradt because it had concluded that either Jeffrey Molnar or Chad Williams would be the experts testifying as to roof replacement. *Doc. 67* at 3-4.

Considering the *Woodworker's* factors, *see Woodworker's Supply, Inc*., 170 F.3d at 993, the Court finds that Mr. Conradt's late disclosure about the roofs all needing replacement because of the hail damage was not substantially justified or harmless. Defendant is prejudiced because it is too late to depose Mr. Conradt and Defendant is unable to effectively prepare for cross-examination because it is unclear exactly what facts Mr. Conradt is basing his opinion on.[2] While Plaintiff suggests that the Court could order a deposition of Mr. Conradt or allow supplementation, *see doc. 61* at 11-12, trial is in under two months and the pretrial conference is less than one month away. There is likely not enough time to allow Defendant to depose Mr. Conradt without disrupting the trial setting.

The Court has considered the efficacy of lesser sanctions. However, the Court finds that the only reasonable sanction is exclusion of the improperly disclosed opinion. Accordingly, Mr. Conradt's opinion that the hail damage requires "complete replacement of the roofing systems as identified in the scope of work of Rick Doshier

[2] While Mr. Conradt may in fact be qualified to give an opinion on whether the roofs need to be replaced, his qualifications and the reliability of his testimony are not relevant to the question before the Court. Rather, the issue is whether Defendant had *notice* of the testimony and, if not, whether Defendant has been prejudiced by the testimony's late disclosure.

and 5D Loss Consultants," *doc. 56-5* at ¶ 4, will not be considered by the Court when ruling on Defendant's Motion for Summary Judgment (*doc. 55*) and will not be allowed at trial. With respect to the late-disclosed opinion of Mr. Conradt, Defendant's Motion is GRANTED.

**c. Opinions of Jeffrey Molnar**

Defendant takes issue with three allegedly late opinions from Plaintiff's expert metallurgist, Jeffrey Molnar. The Court will address each in turn.

i. *Opinion One: The Roofs Sustained "Functional Damage"*

In his unsworn statement attached to Plaintiff's Response to Defendant's Motion for Summary Judgment (*doc. 56*), Mr. Molnar opined that in his metallurgical opinion the hail caused "physical and functional damage to the roof-panel system[.]" *Doc. 56-4* at ¶ 8. The Court finds this opinion to be admissible for the purpose of ruling on Defendant's Motion for Summary Judgment, because Mr. Molnar did testify in his deposition that the roof sustained damage that was beyond cosmetic, but the use of the term "functional" will not be permitted at trial due to potential jury confusion.

Like "cosmetic," *see doc. 66* at 12 n.4, "functional" is a term of art under the insurance contract at issue in this case. Though Plaintiff alleges the definition of functional damage used by Mr. Molnar is the same as the policy definition, that is not accurate. In deposition testimony cited by Plaintiff, Mr. Molnar defines "functional damage" as "[d]amage that makes it so that a coating no longer protects as it was

originally intended. It doesn't protect from the elements the way it—the way it was supposed to be." *Doc. 61* at 14. In his unsworn declaration, Mr. Molnar defines "functional damage" as "damage that causes the Galvalume coating system to no longer protect the underlying steel as originally intended from environmental exposure and corrosion." *Doc. 56-4* at ¶ 3. Neither of these definitions are the same as the Policy definition of "functional damage," which Plaintiff admits is "damage which prevents the roof from continuing to function as a barrier to the entrance of the elements to the same extent as it did before the damage occurred." *Doc. 61* at 13; *see also doc. 39-1* at 8. The phrase "as originally intended" is not equivalent to "to the same extent as it did before the damage occurred." The difference is plainly apparent when discussing roofs of an uncertain age. Even before the hail damage, the roofs at issue may not have been functioning "as originally intended." The relevant question in this case is whether the roofs were functioning at the same level *after* the hail damage as they were before it.

Accordingly, the Court finds that allowing Mr. Molnar to testify to "functional damage" could be confusing to a jury and possibly prejudicial to Defendant. The Court will therefore exclude the use of the term "functional" at trial[3] but will consider Mr. Molnar's opinions regarding the extent of the hail damage for the purposes of summary judgment.

[3] The Court will discuss suitable synonyms with the parties before trial.

ii. *Opinion Two: The Opinions are Based Upon the "Applicable Language of the Insurance Policy"*

Mr. Molnar also stated that the "functional damage" to the roof panel system fit into the "applicable language of the Insurance Policy." *Doc. 56-4* at ¶ 8. Defendant asserts this is a late-disclosed opinion because Mr. Molnar testified that none of the opinions in his written report were based on a review of the policy language. *Doc. 57* at 4-5; *see doc. 55-5* at 42:17-25. Further, Mr. Molnar stated in deposition that he was not provided with a copy of the insurance policy at issue, *doc. 55-5* at 38:22-25, and even in the new declaration he never claimed to have read the insurance policy, *see doc. 56-4* at 1-2.

Plaintiff argues that Mr. Molnar testified that the standard he used for functional damage was the same one described in the language of the policy. *Doc. 61* at 13. Accordingly, Defendant was on notice that Mr. Molnar's testimony included the opinion that the hail damage was *functional as defined by the policy*. *Id.* at 14.

The Court finds Plaintiff's argument to be unpersuasive. First, as explained above, the definitions of "functional damage" as described by Mr. Molnar are not equivalent to the language of the policy.

Further, if Mr. Molnar never reviewed the relevant policy language[4], Defendant would have no reason to suspect that he would testify regarding whether the damage

[4] Plaintiff never clearly states that Mr. Molnar *did in fact* read the relevant portions of the insurance policy. *See doc. 61*. Plaintiff claims that "[t]o the extent that Nationwide incorrectly asserts that Molnar's

was *within* the terms of that policy. Put simply, if Mr. Molnar did not read the policy, he cannot express an opinion on the policy. *See doc. 65-5* at 39:4-5 ("I'm not a policy expert, nor do I want to be."). The Court finds that inclusion of this testimony would unfairly prejudice the Defendant. Accordingly, regarding Mr. Molnar's opinions that the sustained damage is functional under the "applicable language of the Insurance Policy," Defendant's Motion is GRANTED. The Court will not consider Mr. Molnar's opinion that the damage fits into the Policy definition when deciding the Motion for Summary Judgment and Mr. Molnar will not be able to testify to that effect at trial.

iii. *Opinion Three: The Roof is "Weakened"*

The final allegedly new opinion from Mr. Molnar is that the roofs on the property were "weakened" and "not acting as a barrier to the entry of the elements to the same extent [they] did before the hail damage occurred." *Doc. 56-4* at ¶ 9. Defendant claims that none of Molnar's reports use the term "weak" or any derivative, and during Mr. Molnar's deposition he never testified that the hail damage weakened any of the roofs. *Doc. 57* at 5. In response, Plaintiff alleges that the term "weakening" is simply a summation of Mr. Molnar's findings that the hailstorm caused the roofs'

---

declaration is somehow inconsistent with his deposition testimony…[p]articularly as related to questions about whether he reviewed the insurance policy definition…the objection goes to the weight and not the admissibility of the testimony." *Id.* at 15 & n.38. Given that the definition of "functional" as used by Mr. Molnar is not precisely the same as the policy definition, Mr. Molnar testified he was not provided a copy of the Nationwide Insurance policy to form his opinions in the case, and Plaintiff does not affirmatively state that Mr. Molnar reviewed the policy, there is insufficient evidence to combat Defendant's assertion that Mr. Molnar did not read the policy.

Galvalume barrier to be microcracked and to not be "acting as a barrier to the same extent" as it did before the hail damage occurred. *Doc. 61* at 15.

The "Galvalume coating" at the center of this debate is a zinc and aluminum coating that is designed to prevent the corrosion of metal roofs. *Doc. 65-5* at 30:16-21; *see also doc. 56-4* at ¶ 5. Defendant seems to assert that the Galvalume coating on the roofs is separate from the roofs themselves. *See doc. 67* at 7 ("Molnar's new opinion is *not* that the *Galvalume coating* is weakened…his new opinion is that 'the **roof** is weakened[.]'") (emphasis in original). However, Defendant does not direct the Court to any evidence that would support this. The Galvalume coating was applied to the metal roofs on the Clovis property; accordingly, the Galvalume coating system became *part of* each roof upon which it was applied. It would stand to reason, then, that if the Galvalume coating was weakened by hail, then the roof was weakened by hail.

Defendant argues that during his deposition, Mr. Molnar "denied conducting any testing to determine whether the roofs were weakened," *doc. 67* at 7, but the cited testimony merely states that Mr. Molnar did not conduct tests to determine whether the roofs had a reduced ability to shed water or protect from rain, snow, wind, gas, or heat. *Doc. 65-5* at 74:1-17. That testimony is not dispositive because whether something is "weakened" is a matter of degree. A roof does not need to completely fail to protect from rain, snow, or wind to be "weakened." Mr. Molnar's report clearly states that in his opinion, the hail impact damaged the Galvalume coating and resulted in localized

corrosion of the roof. *Doc. 56-4* at 4. Even if he did not specifically use the word "weaken" that opinion would fit the definition of the term as the Galvalume coating, part of the roof, was allegedly not functioning as well as it had prior. *See* "Weaken," *Oxford English Dictionary* (Oxford University Press, 2023), https://www.oed.com/dictionary/weaken_v#1409386460, accessed Oct. 13, 2026 (defining "to weaken" as including "to render less efficacious."). The essence of Mr. Molnar's opinion is not new, and Defendant was on notice of its substance long before Plaintiff's Response to the Motion for Summary Judgment. Accordingly, the Court will consider the opinion that the roof was "weakened" when ruling on Defendant's Motion for Summary Judgment.

However, the second part of the opinion, that a weakened roof is "not acting as a barrier to the entry of elements to the same extent it did before the hail damage occurred," *see doc. 56-4* at ¶ 9, is new. As described above, that language is pulled from the insurance policy, but is materially different from Mr. Molnar's earlier opinion. *See supra* at 10 ("The phrase 'as originally intended' is not equivalent to 'to the same extent as it did before the damage occurred.'"). Consequently, for the same reasons expressed above, the Court will not consider Mr. Molnar's opinion that the roof is "not acting as a barrier to the entry of elements to the same extent it did before the hail damage occurred" when deciding the Motion for Summary Judgment and Mr. Molnar will not be permitted to testify to that effect at trial.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Exclude Late Disclosed Opinions (*doc. 57*) is GRANTED IN PART and DENIED IN PART. Ricky Conradt's opinion regarding the necessary replacement of all the roofs, *doc. 56-5* at ¶ 4, Jeffrey Molnar's opinion that the damage sustained by the roofs falls under the "applicable language of the Insurance Policy," and Jeffrey Molnar's opinion that the roofs were "not acting a barrier to the entry of the elements to the same extent [they] did before the hail damage occurred," *doc. 56-4* at ¶¶ 8, 9 are hereby STRICKEN. Jeffrey Molnar's statement that the roofs sustained "functional damage" and his opinion that roofs on the property were "weakened" *id.* at ¶¶ 8, 9, will be considered for the purpose of Summary Judgment, but his testimony will be limited at trial as described above.

**IT IS SO ORDERED.**

GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**